**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOSEPH LEE SNYDER, | ) CASE NO. 1:23-CV-01089-CEH |
| Plaintiff, | ) |
| | ) CARMEN E. HENDERSON |
| v. | ) UNITED STATES MAGISTRATE JUDGE |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) **MEMORANDUM OF** |
| Defendant, | ) **OPINION & ORDER** |
| | ) |

**I. Introduction**

Plaintiff, Joseph Lee Snyder ("Snyder" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

**II. Procedural History**

On May 12, 2016, Claimant filed an application for SSI, alleging a disability onset date of February 5, 2008. (ECF No. 9, PageID #: 49). The application was denied initially, upon reconsideration, and, following a hearing, in a July 17, 2018 written decision by an administrative law judge ("ALJ"). (*Id.* at PageID #: 49-59). The Appeals Council declined further review and Claimant filed a complaint in this Court challenging the Commissioner's final decision. (*Id.* at PageID #: 35). On May 29, 2020, based on the parties' stipulation, the case was remanded for further proceedings. (*Id.* at PageID #: 557).

1

Following remand, an ALJ held another hearing and again found Claimant not disabled in a November 5, 2020 written decision. (*Id.* at PageID #: 478-88). Claimant appealed the decision directly to this Court and on February 4, 2022, again on the parties' stipulation, the case was remanded for further proceedings. (*Id.* at PageID #: 983).

On February 7, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 889). On February 20, 2023, the ALJ again issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 889-900).

On May 31, 2023, Claimant filed the instant Complaint to challenge the Commissioner's decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 13, 14). Claimant asserts the following assignments of error:

> (1) The ALJ's decision is not supported by substantial evidence because she failed to appropriately evaluate the medical opinions of record pursuant to the legal requirements of SSR's 96-2p.
>
> (2) The ALJ failed to meet her burden of proof at step 5 of the sequential evaluation because the ALJ failed to account for all of Mr. Snyder's functional limitations in the RFC and the ALJ failed to explain why they were omitted.

(ECF No. 10 at 4).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

The claimant originally alleged disability due to bipolar disorder and depression (Exhibit C1E). At the hearing, the claimant testified that he lives alone, is able to cook simple meals, does laundry occasionally, and cleans. He does not have a driver's license because he is afraid to drive. He also alleges that he does not handle changes well. At the hearing, the claimant alleged that he is not able to work because he is afraid to be around others and gets easily nervous. The claimant is able to shop for groceries, but tries to go when there are fewer people. He communicates with neighbors minimally and sees family and a friend occasionally.

>The claimant alleged at the hearing that he is not able to concentrate well enough to read. He also indicated that he experiences pain in his knees and back

(ECF No. 9, PageID #: 894).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

>[T]reatment records document a history of treatment for depression, anxiety, and isolation (Exhibit C2F at 33-35). On examination, the claimant exhibited depressed mood and anxiety; however, thought content, speech, and thought processes were all normal. Follow-up treatment records document stabilized mood with medication (Exhibit C2F at 20). The claimant reported mild mood swings, irritability, and memory loss. The claimant had a cooperative demeanor, full affect, logical thought processes, good insight, normal impulse control, average eye contact and good judgment. In July 2016, the claimant again reported that his medication was working well and he was isolating less as he was able to attend a concert with a friend (Exhibit C3F at 5 and 12). The claimant presented with a good mood, full affect, and full orientation on examination (Exhibit C3F at 11).
>
>On follow-up in June 2017, treatment records document calm mood and bright affect (Exhibit C5F at 4). The claimant reported that he experiences less anxiety and depression when he is able to complete his activities of daily living (Exhibit C5F at 13). He continued to report anxiety in social situations 1-2 times a week (Exhibit C6F at 238). However, the claimant's mood and anxiety remained stable on medication (Exhibit C6F at 20). Follow-up treatment records document fair to good insight and judgment (Exhibit C6F at 12, 20, 40, and 67). In June 2020, the claimant denied experiencing panic attacks (Exhibit C6F at 20). Treatment records continue to document improvement in the claimant's mental condition (Exhibit C6F at 1 and 7). There was some mention of irritability on follow-up; however, the claimant continued to generally deny depression.
>
>In July 2021, the claimant reported that he was doing well with medications (Exhibit C10F at 67). The claimant denied irritability, racing thoughts, suicidal ideation, and hallucinations. He was also exercising by walking and riding his bike and sleeping well. On examination, the claimant was well groomed, eye contact was average, motor activity normal, speech clear/normal, and mood euthymic. The claimant was also cooperative, with full affect, and logical thought process. His memory was intact, intelligence average, attention/concentration intact, insight good, and judgment fair. Follow-up treatment records were essentially unchanged (Exhibit C10F at 43-61).
>
>On follow-up in June 2022, the claimant reported occasional anxiety; however, he was able to manage (Exhibit C10F at 37). His judgment and insight were fair; however, the remainder of his mental status examination was otherwise unchanged.

3

> The claimant continued to report some stress and anxiety; however, he denied side effects to medication (Exhibit C10F at 5, 10, 15, 21, and 32). In October 2022, the claimant noted that he was going to work at the haunted house again, but that it was getting harder (Exhibit C11F at 24). He denied side effects to medication, reported good sleep, and denied irritability, racing thoughts, suicidal ideation, and hallucinations. The claimant reported on follow-up that he is not able to focus more than fifteen minutes and he gets agitated if he has a few things to do (Exhibit C11F at 18). However, he was sleeping well and denied side effects to medication. Treatment records from December 2022 noted that the claimant continued to report difficulty concentrating (Exhibit C11F at 7). He also indicated that he gets agitated if he has to be around others. His mental status remained essentially unchanged (Exhibit C11F at 13).

(ECF No. 9, PageID #: 895-96).

### C. Opinion Evidence at Issue

The ALJ considered multiple medical opinions but only the ALJ's treatment of two opinions from Dr. Ranjan are at issue in this appeal.

On August 24, 2016, Dr. Ranjan completed a Mental Status Questionnaire. (ECF No. 9, PageID #: 292). Dr. Ranjan described Claimant as well-groomed with euthymic mood and full affect and normal orientation. (*Id.*). He indicated that Claimant "has anxiety brought on by crowds, mood swings, racing thoughts, agoraphobia, unusual sudden thoughts of suicide," below average intelligence, impaired concentration, impaired memory, and poor insight and judgment. (*Id.*). As part of a Medical Source Statement ("MSS") within the questionnaire, Dr. Ranjan indicated that Claimant "is below average intelligence," "is easily distractable," "would require constant redirection," "lacks social skills to take direction effectively" and "has anxiety in crowds or gatherings of people." (*Id.* at PageID #: 293).

On May 8, 2017, Dr. Ranjan[1] completed a second MSS. (*Id.* at PageID #: 358). Dr. Ranjan indicated that Claimant "requires time away from others as he struggles to be around people" and

---

[1] The Court notes that while the first opinion is signed "Rakesh Ranjan, MD," the second opinion is signed "Rajesh Rankan, MD." However, there does not seem to be any dispute that the opinions were authored by the same individual.

4

would need an unknown number of unscheduled breaks during a workday. (*Id.*). He listed Claimant's abilities as "poor" in the following areas: use public transportation; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being (unduly) distracted by them; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in a routine work setting. (*Id.* at PageID #: 359-60). Dr. Ranjan indicated that Claimant "appears to have poor adaption skills, poor follow through" and "does not adapt to changes in a routine work setting." (*Id.* at PageID #: 360). He opined that Claimant had extreme limitations in his ability to "concentrate, persist, or maintain pace" and "adapt or manage oneself." (*Id.*). He also opined that Claimant would miss four or more days of work per month. (*Id.* at PageID #: 361).

**IV. The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since May 12, 2016, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: depression, anxiety, bipolar disorder, and degenerative disease of the spine (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the following: lift/carry/push/pull fifty pounds occasionally and twenty-five pounds frequently, stand/walk six hours and sit six hours of an eight-hour workday, frequently climb ladders/ropes/scaffolds, frequently stoop, can perform simple, routine tasks, but not at a production rate pace, is limited to frequent interactions with supervisors/co-workers and occasional interaction with public, and is limited to routine workplace changes.

> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> . . .
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since May 12, 2016, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 9, PageID #: 892, 894, 899-900).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

B. **Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 415.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 416.912(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

C. **Discussion**

Claimant raises two issues on appeal, arguing that the ALJ erred in her treatment of Dr. Ranjan's opinions and in crafting an RFC that did not account for all his limitations.

1. **The ALJ did not err in her evaluation of Dr. Ranjan's opinions.**

Claimant first argues that "the ALJ's evaluation of the treating psychiatrist's opinion was not in compliance with the mandates of SSR 96-2p." (ECF No. 10 at 17). He asserts that the ALJ "did not consider whether Dr. Ranjan's opinions were well supported by the other medical

7

opinions of record or the record was [sic] whole" and all the other opinions supported Dr. Ranjan's opinion. (*Id.*). Claimant argues that instead of considering whether the opinions were well supported, "the ALJ determined that the psychiatrist's opinion was not consistent with the claimant's treatment records[ b]ut that was an improper standard of analysis under SSR 96-2p." (*Id.* at 18). Additionally, Claimant argues this conclusion was incorrect because "the ALJ's analysis was mainly focused on evidence that supported her determination to the exclusion of the evidence in the record." (*Id.* at 19).

The Commissioner responds that "the ALJ set forth numerous 'good reasons' for not giving Dr. Ranjan's opinions controlling weight." (ECF No. 13 at 14). As to the 2017 opinion, the Commissioner argues that "[n]o mental status findings were included to provide support for the limitations to which he opined; instead, Dr. Ranjan appears to have based his opined limitations primarily on Plaintiff's subjective reports about his ability to function." (*Id.*). The Commissioner also argues that the 2017 opinion is unsupported because it is a check-box opinion. (*ld.* at 15). Concerning the 2016 opinion, the Commissioner argues "it also lacked support in that [Dr. Ranjan] failed to cite any mental status findings from his own treatment records to support his opinion." (*Id.*). The Commissioner argues that the "ALJ further indicated that Dr. Ranjan's opinions were not consistent with Plaintiff's treatment records" and provided a detailed discussion of his treatment. (*Id.* at 17-19). The Commissioner asserts that "[i]n arguing that the ALJ engaged in 'cherry picking' of the evidence and in asserting that the non-persuasive opinions were consistent with and supported by the evidence of record, Plaintiff is inviting the Court to reweigh the evidence" without showing that the ALJ's decision was not supported by substantial evidence. (*Id.* at 19-20 (internal citation omitted)).

Claimant replies that the ALJ "fail[ed] to evaluate the record as a whole, and her one

paragraph assessment of Dr. Ranjan's medical opinions did not rise to the level of good reasons for rejecting the psychiatrist's opinions." (ECF No. 14 at 1). Concerning the check-box format of the 2017 opinion, Claimant asserts that Dr. Ranjan "offered two opinions close in time and they should be read and understood in tandem." (*Id.* at 3). Claimant argues that the ALJ did not cite to Dr. Ranjan's opinions being based on subjective complaints as a reason for discounting the opinions but rather this is the rational of counsel in this appeal. (*Id.* at 4). Claimant argues that the ALJ failed to explain how certain actions—including attending a concert in 2016, traveling to Florida in 2019, briefly living with a former girlfriend in 2020, and having brief conversations with people in his apartment building—over the six and a half years at issue amounted to substantial evidence to support that Dr. Ranjan's opinion was not supported by or consistent with the record. (*Id.* at 6).

Under the treating source rule,[2] an ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, at *2.

> If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the

---

[2] The regulations for handling treating source evidence have been revised for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.927. However, Snyder filed his claim before the revision took effect such that the treating source rule applies.

9

treating physician.

*Blakley*, 581 F.3d at 406; *see also* § 416.927(c)(2). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR 96-2p, 1996 WL 374188, at *5). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The ultimate question is whether the Commissioner's decision is supported by substantial evidence and whether it was made pursuant to proper legal standards. *Cole*, 661 F.3d at 939.

> The ALJ summarized Dr. Rajan's opinions and her treatment of the opinions:
>
> In August 2016, Dr. Ranjan concluded that claimant is easily distractible and would require constant redirection (Exhibit C2F at 3). In May 2017, he concluded that the claimant would require additional work breaks to get away from people, and he would have up to extreme limitations in his ability to concentrate, persist, maintain pace, and adapt/manage himself (Exhibit C4F at 3). Finally, he concluded that the claimant would need to miss work four or more days per month.
>
> I give little weight to the conclusions of Dr. Ranjan as they are well supported and are not consistent with the claimant's treatment record. For example, the claimant generally reported that his medication was working well and he was isolating less. Treatment records document good/calm mood, full affect, stable mood and anxiety, and fair to good insight and judgment. As outlined above, the claimant's treatment records document no more than moderate limitations in functioning. The objective evidence of record does not support such extreme limitations as Dr. Ranjan proposes.

(ECF No. 9, PageID #: 896). While the decision indicated the opinions were "well supported," the

10

parties agree that this is a typographical error and that the ALJ found the opinions were *not* well supported. (*See* ECF No. 10 at 18; ECF No. 13 at 14 n.10).

Based on this discussion, the Court finds that the ALJ did not err in her analysis of Dr. Ranjan's opinions. First, the ALJ found that the opinions were not well supported or consistent with the record such that they were not entitled to controlling weight. In support of this conclusion, the ALJ cited her earlier analysis of Claimant's mental functioning and medical records. The records cited by the ALJ include multiple reports by Claimant that he was "doing better," "somewhat better," or "well" on his medications. (ECF No. 9, PageID #: 309, 331, 338, 1057, 1062, 1067, 1073, 1089, 1095, 1100, 1104, 1109, 1113, 1119). The ALJ also noted Claimant's report that while he experienced mood swings, he was "able to cope when this happens from the medication." (*Id.* at PageID #: 864). In finding that Claimant had moderate limitations in his ability to maintain social functioning, the ALJ cited to Claimant's work at a haunted house, treatment notes describing Claimant "as cooperative with good eye contact and clear/normal speech," and Claimant's limited interaction with others. (ECF No. 9, PageID #: 893). The ALJ indicated that "[t]reatment records generally document average motor activity, intact memory, and normal concentration/attention." (*Id.*). Thus, substantial evidence supports the ALJ's decision.

This same discussion also provides good reasons for assigning little weight to the opinions. As previously observed by the Sixth Circuit, "[s]upportability, or how well a treating source explains his or her opinion, is a highly relevant § 404.1527(c) factor, and the ALJ commit[s] no legal error when he relie[s] on that factor to discount [treating source] opinions." *Thomas v. Comm'r of Soc. Sec.*, No. 21-3471, 2022 WL 633846, at *4 (6th Cir. Mar. 4, 2022). To the extent Claimant points to other evidence in the record that would contradict the ALJ's conclusion that the opinions were not supported, "'the mere existence of a contrary opinion' or piece of evidence

11

in the record does not undermine the ALJ's notice of good reasons." *Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 971 (6th Cir. 2021).

Ultimately, substantial evidence supports the ALJ's decision that Ranjan's opinions were unsupported by and inconsistent with the record and therefore afforded little weight.

**2. The ALJ did not err in formulating the RFC.**

Claimant's second argument is that the "RFC was defective because it did not accurately portray him and was not based on the record as a whole" because the ALJ "engaged in a selective analysis of the evidence to portray Mr. Snyder more capable than he actually was." (ECF No. 10 at 22). Specifically, Claimant challenges the conclusion that he "was capable of <u>frequent</u> interactions with supervisors and co-workers, and occasional interaction with the public," arguing that the ALJ cited no evidence in support of this conclusion—which he asserts was contrary to the medical opinions—and failed to provide any rationale for her conclusion. (*Id.*). Additionally, Claimant argues that despite opinions indicating his need for additional breaks throughout the day, "this functional limitation was not included in the RFC nor did the ALJ explain why it was omitted." (*Id.* at 23).

The Commissioner responds that Claimant "points to various findings that could support additional restrictions, but the ALJ considered those findings, along with other evidence, before concluding that Plaintiff was not as impaired as alleged" and Claimant has failed to show that this finding was not supported by substantial evidence. (ECF No. 13 at 21). The Commissioner argues that the ALJ properly considered evidence in the record of stabilization and improvement of Claimant's symptoms; "mental status examination findings, which included a normal mood at times, normal thought content, normal speech, normal thought process, cooperative demeanor, full affect, fair to good insight, normal impulse control, average eye contact, fair to good judgment, a

12

well-groomed appearance, intact memory, average intelligence, intact attention and concentration, and normal motor activity;" Claimant's reported activities; and the medical opinions. (*Id.* at 22-23).

Claimant replies that "[h]e was afraid of people, easily distracted, had poor adaptive skills and isolated himself" but the "RFC failed to take those limitations into consideration, and the ALJ failed to explain why they were omitted." (ECF No. 14 at 7). He argues that "SSR 96-2p required the ALJ to provide a narrative discussion how the evidence supported [the limitations on interactions in the RFC] and she failed to do so in violation of the Rule," which also "deprived this Court of a logical bridge between the evidence of record and her conclusion." (*Id.* at 9).

An RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if a court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 880 (N.D. Ohio 2011) (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [. . .] contradictory,

13

objective medical evidence' presented to him.")); *see also* SSR 98-6p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The RFC is for the ALJ to determine; however, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

As relevant here, the RFC provided that Claimant "can perform simple, routine tasks, but not at a production rate pace, is limited to frequent interactions with supervisors/co-workers and occasional interaction with public, and is limited to routine workplace changes." (ECF No. 9, PageID #: 894). The ALJ explained her decision as follows:

> treatment records generally describe the claimant as cooperative with good eye contact and clear/normal speech. The claimant alleged that he is not able to work because he is afraid to be around others and gets easily nervous. Due to moderate limitations in social functioning, the claimant is limited to frequent interactions with supervisors/co-workers and occasional interaction with public. Treatment records generally document average motor activity, intact memory, and normal concentration/attention; however, the claimant alleges that he is not able to concentrate well enough to read. Due to moderate limitations in his ability to maintain concentration, persistence, or pace, the claimant is not able to work at a production rate pace and is limited to routine workplace changes.

(*Id.* at PageID #: 898).

Substantial evidence supports the RFC. The ALJ concluded that Claimant had moderate limitations in his ability to complete activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace. (*Id.* at PageID #: 893). In support of these conclusions, the ALJ cited Claimant's ability to live independently, shop for groceries, maintain personal care, run errands, and work in a haunted house. (*Id.*). The ALJ also considered treatment records describing Claimant "as well groomed, with insight, fair judgment, and average intelligence;" "as cooperative with good eye contact and clear/normal speech;" and as having

14

"average motor activity, intact memory, and normal concentration/attention." (*Id.*).

In making his argument, Claimant relies on Dr. Ranjan's opinions, as well as opinions from Aubrey Winkler-Krueger, PA-C; Sindhu Kurup, PA; and Bruce Goldsmith, Ph.D. (ECF No. 10 at 22-23). However, as discussed above, the ALJ properly assigned little weight to Dr. Ranjan's opinions. (ECF No. 9, PageID #: 896). The ALJ also assigned little weight to the opinions of Winkler-Krueger and Kurup, finding that they were both unsupported and inconsistent with the record. (*Id.* at PageID #: 896-97). The ALJ assigned partial weight to Goldsmith's opinion. (*Id.*). Snyder does not challenge the ALJ's treatment of these opinions. Because the ALJ gave at most partial weight to these opinions, "the ALJ was not required to adopt *any*, much less all, of the limitations from those opinions." *Winner v. Comm'r of Soc. Sec.*, No. 1:19-cv-2348, 2020 WL 4734756, at *12 (N.D. Ohio Aug. 13, 2020) (emphasis added) (citing *Rogers v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 276 (6th Cir. 2015)); *see Ward v. Colvin*, No. 5:12CV2722, 2013 WL 6507344, at *13 (N.D. Ohio Dec. 12, 2013) ("An ALJ is only required to incorporate into the hypothetical question, limitations that he or she accepts as credible."). Additionally, the ALJ explained her decision not to adopt the more restrictive limitations included in these opinions, indicating they were "not consistent with the weight of the objective evidence of record" given that treatment records "consistently describe his condition as stable, good, or progressing with medication;" "generally document fair to good insight and judgment, average eye contact, normal motor activity, clear/normal speech, and euthymic mood;" and indicated Claimant was "cooperative, with full affect, logical thought process, intact memory, average intelligence, and intact attention/concentration." (ECF No. 9, PageID #: 896).

The decision makes clear that the ALJ found that the more restrictive limitations were not supported by or consistent with the record and the ALJ built an accurate and logical bridge between

15

the evidence and this conclusion. Because the ALJ's conclusion is supported by substantial evidence, the Court must defer to it, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: March 14, 2024

s/ *Carmen E. Henderson*  
CARMEN E. HENDERSON  
U.S. MAGISTRATE JUDGE